IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| K.M. | : | |
| | : | |
|     Plaintiff, | : | CIVIL ACTION. |
| | : | |
| v. | : | FILE NO.: |
| | : | |
| REVA PROPERTIES, LLC | : | |
| d/b/a Super 8 | : | |
| | : | |
|     Defendant. | : | |

# COMPLAINT

Matthew B. Stoddard
Belle-Anne B. Cooper
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
ba@legalhelpga.com

**Attorneys for Plaintiff**

# TABLE OF CONTENTS

Introduction.................................................................................3

The Parties..................................................................................4

Procedural Issues...........................................................................4

K.M. Is Trafficked for Sex at Defendant's Hotel..........................................5

COUNT 1:   TVPRA Civil Beneficiary Claims..............................................7

    A.    Defendant Knowingly Benefited..........................................8

    B.    Defendant Took Part in A Common Undertaking.............................9

    C.    The Undertaking Violated the TVPRA...................................10

    D.    Defendant Had, At Least, Constructive Knowledge.........................12

        i.    The Industry Knowledge.............................................13

        ii.    The Online Reviews................................................15

        iii.    The Law Enforcement Activity......................................16

        iv.    The Signs and Symptoms of K.M.'s Trafficking......................17

Proximate Cause and Damages............................................................19

Prayer for Relief..........................................................................21

**INTRODUCTION**

1.      This lawsuit is brought by a sex trafficking victim against a Super 8 motel, and it seeks damages under the Trafficking Victims Protection Reauthorization Act's (TVPRA) civil beneficiary provision. *See* 18 U.S.C. § 1595(a) (stating that a sex trafficking victim "may bring a civil action against . . . whoever knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of the" TVPRA.); *see also Doe #1 v. Red Roof Inn, Inc.*, 21 F.4th 714 (11th Cir. 2021); *Ricchio v. McLean*, 853 F.3d 55 (1st Cir. 2017).

2.      A hotel located at 5354 Snapfinger Park Dr., Decatur, Georgia has been owned by Defendant Reva Properties, LLC d/b/a Super 8 (hereinafter "Super 8") since 1994.

3.      Beginning in approximately November of 2013 and ending in 2016, Plaintiff K.M. (along with multiple other human beings) was repeatedly trafficked for sex by Corey Andrew Hollie a/k/a Bogotti at the Super 8.

4.      Defendant's Super 8 is a notorious hotspot for illicit activity that has been attracting sex trafficking and prostitution ventures for years.

5.     The purpose of this lawsuit is to hold Defendant responsible for its role in making money off of K.M.'s human trafficking and to help prevent the trafficking of new victims by forcing Defendant to change its conduct.

## THE PARTIES

6.     Plaintiff K.M. is a resident and citizen of Cleveland, Ohio.

7.     Plaintiff K.M. consents to the jurisdiction of this Court.

8.     Defendant Reva Properties, LLC is a Georgia limited liability company that owned and operated the Super 8 in Decatur, Georgia during the relevant period.

## PROCEDURAL ISSUES

9.     Given the nature of the case, K.M. is identified in this Complaint by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed K.M.'s full name to defense counsel or will immediately upon identification of defense counsel.  When filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking Court permission for K.M. to proceed anonymously.  Upon information and belief, Defendant will consent to K.M. proceeding without publicly disclosing her names.

10.     Defendant Super 8 can be served through its registered agent: Vijay K. Patel at 8800 Roswell Road, Building C, Suite 525, Atlanta, GA 30305.

11.     Defendant was properly served with process in this matter.

12.     Defendant is subject to the jurisdiction and venue of this Court.

13.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act which is a law of the United States.

14.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Lithonia, Georgia which is within the Northern District of Georgia's Atlanta Division. *See* 28 U.S.C. § 1391.

**K.M. IS TRAFFICKED FOR SEX AT DEFENDANT'S SUPER 8**

15.     In November of 2013, K.M., was a twenty-one-year-old woman living in the Atlanta area.

16.     K.M. was approached by Hollie near the Super 8 Motel on Snapfinger Drive, and Hollie told K.M. he would "help her."

17.     Hollie brought K.M. to a room he had rented from Defendant and provided K.M with shelter and food in that room.

18.     Hollie then told K.M. that she owed him for the food and shelter, and that he would be selling her body for sex.

19.     Hollie threatened violence and began screaming at K.M.

20.     Between approximately November 2013 through 2016, K.M. spent weeks at a time at Defendant's Super 8 being sold for sex.

21.     The initial visit lasted approximately a week.  Hollie would switch rooms every few days.

22.     In total, K.M. was at Defendant's Super 8 for at least three months of every year from November 2013 to 2016.

23.     Hollie would take K.M. to other places and then return her to Defendant's Super 8.

24.     K.M. was sexually assaulted hundreds of times while at Defendant's property with Hollie.

25.     Hollie took the commercial sex act proceeds.

26.     For the duration of the stays, Hollie used a portion of the proceeds from each commercial sex act to book lodging at Defendant's property for the next night.

27.     For many of the nights, Hollie had K.M. "working" in the same room as another victim named "KK."  Hollie had other girls working for him at the Super 8 as well including "Cherry", "Jules", "Dior", and a few others.

28.     Hollie threatened violence unless K.M. completed the commercial sex acts.

29.     Hollie frequently beat K.M. throughout the entire period.

30.     Hollie similarly exerted force, fraud, and coercion on the other victims – also forcing them to perform commercial sex acts at Defendant's property over and over again.

31.     Hollie had "connections" and "friends" who worked at Defendant's property, and therefore gave him favorable treatment.

32.     On many occasions, Defendant would tell Hollie and some of the victims that there was too much foot-traffic to the room, but instead of kicking Hollie off property, Defendant would allow Hollie to change rooms.

33.     On other occasions, Defendant would kick Hollie and his victims off property because there was too much foot traffic, but only for a few days.  After those few days, Defendant would re-rented rooms to Hollie and the victims would continue to be sexually assaulted in those rooms.

34.     In 2016, and after being beat multiple times, K.M. escaped from Hollie.

**COUNT 1: TVPRA CIVIL BENEFICIARY CLAIMS**

35.     The Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPRA") provides a civil cause of action to victims like K.M. against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known" violated the TVPRA.

36.    Under the civil beneficiary provision of 18 U.S.C. § 1595(a), a person is liable for knowingly benefiting from participating in a venture if the defendant "knew or should have known" that the venture committed acts that violated the criminal provisions of the Trafficking Victims Protection Reauthorization Act.

37.    The "knew or should have known" language specifies a negligence standard. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 799-800 (1998) (acknowledging that "knew or should have known" refers to a negligence standard); *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (holding that a duty arises in a maritime negligence case when the defendant had actual or constructive knowledge which "hinges on whether it knew or should have known about the" risk creating condition); *see also Ricchio v. Bijal, Inc.*, 424 F. Supp. 3d 182, 193-94 (D. Mass. 2019) (collecting cases on this issue); *A.B. v. Marriott Int'l, Inc.*, 455 F.Supp.3d 171 (E.D. Pa. 2020) (also collecting cases on this issue).

## COUNT 1(A):
## DEFENDANT KNOWINGLY BENEFITTED

38.    Defendant "knowingly benefited" from K.M.'s trafficking because:

a.    Hollie rented rooms at Defendant's property;

b.    Defendant collected revenue from the room rentals; and

c.    K.M. was forced to have sex in those rooms.

## COUNT 1(B):
## <u>DEFENDANT TOOK PART IN A COMMON UNDERTAKING</u>

39.     Defendant took part in a common undertaking involving risk or profit

with the trafficker(s) because:

a.      Plaintiff's trafficker(s) would pay in cash for one night at a time, booking the next night's stay before check-out time;

b.      Defendant directly rented rooms to people it knew or should have known were engaged in sex trafficking including the trafficking of Plaintiff;

d.      Defendant was directly renting rooms to the same trafficker(s) – Plaintiff's trafficker(s);

e.      Defendant had commercial dealings with Plaintiff's trafficker(s) and then continued to rent rooms to Plaintiff's trafficker(s).

f.      Defendant had a continuous business relationship with Plaintiff's trafficker(s) such that Defendant established a pattern of conduct with those trafficker(s).

g.      After renting the room for the first night, Plaintiff's trafficker(s) had prior commercial dealings with Defendant and then reinstated those dealings.

h.      Defendant associated with Plaintiff's trafficker(s) in an effort to force Plaintiff to serve Defendant's business objectives.

i.      Defendant owned, operated, and maintained the hotel in question.

## COUNT 1 (C):
## THE UNDERTAKING VIOLATED THE TVPRA

40.    The criminal portion of the TVPRA states, in relevant part, that "whoever knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . that means of force, threats of force, fraud, or coercion . . . will be used to cause the person to engage in a commercial sex act, shall be punished . . ." under the TVPRA. 18 U.S.C. §1591(a).

41.    Plaintiff's trafficker's undertaking with Defendant violated the TVPRA with respect to Plaintiff because:

      a.    Hollie recruited K.M. and the other women to participate in commercial sex acts at Defendant's hotel by, among other reasons, stating that he would take care of them and then making them work as prostitutes;

      b.    Hollie harbored K.M. at Defendant's hotel for the purpose of K.M. participating in commercial sex acts at the property;

      c.    Hollie transported K.M. and other women to Defendant's hotel for the purpose of K.M. and those other women participating in commercial sex acts at the hotel;

      d.    Hollie maintained K.M. and other women at Defendant's hotel for the purpose of K.M. and those other women participating in commercial sex acts at the hotel;

      e.    The commercial sex acts occurred at Defendant's hotel in rooms rented by Hollie;

    f.       Hollie used force, threats of force, fraud, and coercion to cause K.M. to participate in commercial sex acts at Defendant's property;

    g.      Hollie withheld food, threatened K.M. with violence, struck K.M. multiple times, and used these tactics to cause K.M. to engage in commercial sex acts at Defendant's property;

    h.      Hollie de-frauded K.M. by falsely telling her that he would take care of her, and then beating her and forcing her to work as a prostitute for him;

    i.       Hollie coerced K.M. to participate in commercial sex acts at Defendant's property by threatening K.M. with physical harm if she did not continue to engage in commercial sex acts at Defendant's property;

    j.       Hollie knowingly, recruited, enticed, harbored, transported, advertised, maintained, and solicited K.M. to engage in commercial sex acts in the hotel rooms that Hollie rented from Defendant;

    k.      Buyers came to Defendant's hotel, purchased the "right" to have sex with K.M. from Hollie, and then the buyers raped K.M. in Defendant's hotel; and

    l.       Other actions to be proven at trial.

42.    The venture in which Defendant participated affected interstate commerce for numerous reasons including the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the use of credit cards to post online advertisements through websites for selling K.M. in commercial sex acts, the use of

interstate highways to transport K.M. to the hotels by her trafficker(s) (and her associates), and other reasons to be proven at trial.

**COUNT 1(D)**
**DEFENDANT HAD, AT LEAST, CONSTRUCTIVE KNOWLEDGE**

43.     Defendant had actual or constructive knowledge that the undertaking violated the TVPRA, i.e., Defendant had actual or constructive knowledge that K.M. was being trafficked for sex. *See* Fed. R. Civ. P. 9(b)("knowledge and other conditions of a person's mind may be alleged generally); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin.*, *LLC*, 904 F.3d 1198, 1215 (11th Cir. 2018) (same).

44.     Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at its hotel at all relevant times, giving Defendant specific and direct knowledge of sex trafficking, including the sex trafficking that victimized K.M., and other crimes at Defendant's hotel during the relevant period.

45.     K.M.'s victimization followed a pattern that was readily observable and should have been obvious to Defendant's hotel employees based on information available to the public at large and to the hotel industry.

46.     Rather than taking reasonable steps to prevent sex trafficking, Defendant – in the quest for profits – created and maintained a business model that

attracts, facilitates, and encourages the commercial sex market by providing a private and anonymous venue for traffickers and buyers alike.

### COUNT 1(D)(i): The Industry Knowledge

47.     Defendant knew or should have known of the existence and prevalence of sex trafficking at budget motels and its illegality since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' Palermo Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children also in 2000.

48.     Defendant knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Child Protection Code of Conduct (the "Code") which outlines well-established best practices for the hospitality industry to combat sex trafficking, and identifies six simple steps hotels can take to prevent child sex trafficking, such as:

> a.    establishing corporate policies and procedures against sexual exploitation of children;
>
> b.    training employees in children's rights, the prevention of sexual exploitation and how to report suspected cases;
>
> c.    including a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children;
>
> d.    providing information to travelers on children's rights, the prevention of sexual exploitation of children and how to report

suspected cases;

    e.    supporting, collaborating, and engaging stakeholders in the prevention of sexual exploitation of children; and

    f.    reporting annually on the company's implementation of Code-related activities.[1]

49.    Defendant knew or should have known that, compared to other types of businesses,[2] hotels play a critical role in sex trafficking ventures and serve as "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

50.    Defendant knew or should have known that "[t]he hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity… From check-in to check-out there are a number of indicators victims

---

[1] *See* ECPAT-USA, *The Tourism Child-Protection Code of Conduct*, *available at* www.ecpatusa.org/code/ (last visited Feb. 11, 2022).

[2] *Cf. Sun Tr. Banks, Inc. v. Killebrew*, 266 Ga. 109, 111 (1995) (Sears, J., concurring) ("[T]he banking industry itself anticipates that criminal activity will frequently occur at ATMs."); *Killebrew v. Sun Trust Banks*, 221 Ga. App. 679, 680-81 (1996) (physical precedent only) ("it would be difficult to say that a criminal occurrence at an ATM is unforeseeable as a matter of law. Indeed, such a conclusion could be reached only by turning 'foreseeability' into a legal term of art totally divorced from its meaning in everyday usage.")

and exploiters exhibit during the time they are on a hotel property… With proper training, a front desk agent or a housekeeper can notice that something is not right and respond."[3]

51.     Defendant knew or should have known that, without a venue, or crime scene, a sex trafficking venture ceases to exist.

52.     At all relevant times, Defendant knew or should have known that there was a heightened risk that sex trafficking could take place at its facility as compared to taking place at other locations because of: (i) extensive private sector / non-profit publications informing the public that motels were a hotbed of sex trafficking, (ii) extensive federal / state / local government testimony and press quotations informing the public that low income motels were a particular hotbed of sex trafficking, and (iii) the general nature of Defendant's business involving renting private rooms cheaply by the day with each room having a bed where trafficking could occur.

### COUNT 1(D)(ii): The Online Reviews

53.     Defendant had actual knowledge of the publicly available online Google, My Business, Priceline, Trip Advisor, etc. reviews of their establishments that reported prostitution, sex trafficking, and other illicit activities occurred at their hotels.

---

[3] *See* https://www.ecpatusa.org/hotel-training (last visited Feb. 7, 2022) (emphasis added).

54.    Concerning Defendant's hotel, those reviews, state in part, as follows:

a) This motel is **crawling with prostitutes.**

b) **Lots of activity well into the night**. Might have **prostitutes**, I was afraid to look out.  Just women's voices and were loud.

c) **Prostitute Central** . . . It's like staying in a **brothel/crack house** . . .

d) This motel is located in a very bad area.  **Clearly it was drugs and prostitution going on**.  Will never return!!

e) I'd just checked into my room when **I had a woman walk into my room and ask if i wanted to buy some .....** After checking out my surroundings I could tell she wasn't alone. **They had about three rooms next to each other.**

f) Most of the rooms were occupied by **drunks & drug addicts**. **It is a crack house.** Don't ever stay here.

(bolding added for emphasis; all other emphasis in original)

55.    The online reviews provided Defendant with actual or constructive knowledge of sex trafficking, commercial sex, and the foreseeable risk of future sex trafficking ventures at Defendant's hotel.

### COUNT 1(D)(iii): The Law Enforcement Activity

56.    Upon information and belief, Defendant had actual or constructive knowledge of law enforcement activity reporting widespread prostitution, sex trafficking, and other illicit activities occurring at Defendant's hotel.

57.    Upon information and belief, based on the numerous arrests,

investigations, and police reports, Defendant knew or should have known of the sex trafficking and prostitution ventures operating out of its hotel prior to Plaintiff's sex trafficking.

### COUNT 1(D)(iv): The Signs and Symptoms of K.M.'s Trafficking

58.     Regarding K.M., Defendant and/or its employees observed the vast majority of the evidence that the Department of Homeland Security ("DHS") posts as guidelines to identify and prevent of sex trafficking for hotel staff to be vigilant in observing including:

      a.  persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

      b.  persons who lack freedom of movement or are constantly monitored;

      c.  persons who have no control over or possession of money or ID;

      d.  persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

      e.  requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

      f.  the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

      g.  extended stay with few or no personal possessions in the room;

      h.  excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

      i.  the same person reserves multiple rooms;

j.  a room is rented hourly, less than a day, or for an atypical extended stay;

k.  attempts to sell items to or beg from patrons or staff;

l.  cars in the parking lot regularly parked backward, so the license plates are not visible;

m.  loitering and solicitation of male patrons; and

n.  persons asking staff or patrons for food or money.[4]

59.  Regarding K.M., Defendant and/or its employees observed the vast majority of the evidence that the organization End Child Prostitution and Trafficking (ECPAT-USA) has listed as specific indicators of human trafficking that hotel staff should recognize to combat trafficking including: paying for rooms using cash, paying for multi-day stays one day at a time, escorts various men into the room and lingers until they leave, watching the door, room is frequented by different men, insists on little or no housekeeping, excessive requests for towels and sheets, wearing the same attire or attire that is revealing or inappropriate for the weather, excess lingerie, discarded condoms and lubricants, use of websites with adult classified ads and possessing few personal belongings.[5]

---

[4] U.S. Dep't of Homeland Security, *Human Trafficking and the Hospitality Industry*, available at https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited Feb 10, 2022).

[5] *See* ECPAT-USA, *Human Trafficking Indicators*, available at https://www.ecpatusa.org/s/ECPATUSA_hotelindicatorsheets.pdf (last visited Feb 11, 2022).

60.     Defendant's staff was familiar with Plaintiff's traffickers due to the traffickers staying at Defendant's hotel to traffic girls on multiple occasions for multiple days.

## PROXIMATE CAUSE AND DAMAGES

61.     K.M.'s sex trafficking at Defendant's hotel was a foreseeable and preventable result of Defendant failing to implement reasonable, appropriate, and adequate measures to deter sex trafficking at its hotel and failing to prevent K.M.'s continued victimization by ignoring her obvious, well-known signs and indicators of sex trafficking.

62.     As a direct and proximate result of Defendant's actions, K.M. suffered substantial physical, emotional, and psychological harm and other damages.

63.     Defendant is jointly and severally liable with Hollie and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to K.M.

64.     Defendant is liable for K.M.'s damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

65.     Plaintiff K.M. brings each and every claim for damages permissible under the law against Defendant for injuries suffered in the incidents at issue, and to

recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

    a.    Personal injuries;

    b.    Past, present and future pain and suffering;

    c.    Disability;

    d.    Disfigurement;

    e.    Mental anguish;

    f.    Loss of the capacity for the enjoyment of life;

    g.    Loss of earning capacity;

    h.    Lost wages;

    i.    Diminished capacity to labor;

    j.    Incidental expenses;

    k.    Past, present and future medical expenses;

    l.    Permanent injuries;

    m.    Attorney's fees;

    n.    Punitive damages; and

    o.    Consequential damages to be proven at trial.

66.    Punitive damages should be imposed upon Defendant without

limitation or cap for its actions which are explained more fully above.

67.    Defendant is also liable for paying Plaintiff's attorneys' fees and litigation expenses pursuant to the TVPRA.

68.    Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendant, and one or more or all of the above stated acts were the proximate cause of the injuries and damages sustained by the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment against the Defendant and for the following:

1) That process and summons issue requiring each Defendant to appear as provided by law to answer the allegations of the Complaint;

2) Plaintiff be awarded actual damages in amounts to be shown at trial;

3) Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from the Defendant;

4) Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

6) Punitive damages be imposed upon the Defendant;

7) Plaintiff be awarded a trial by jury; and

8) Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

[signature on next page]

This 4th day of October, 2022.

/s/ Matthew B. Stoddard
Matthew B. Stoddard
Ga. Bar No.: 558215
Belle-Anne Cooper
Ga. Bar No.: 561983
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
ba@legalhelpga.com